# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **WEARABLE SHOE TREE, LLC,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Case No. 1-22-CV-00789-RP** |
| | § | |
| **THE INDIVIDUALS,** | § | |
| **PARTNERSHIPS AND** | § | |
| **UNINCORPORATED** | § | |
| **ASSOCIATIONS IDENTIFIED ON** | | |
| **"SCHEDULE A",** | | |
| *Defendants.* | | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:  THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before this Court are Plaintiff's Motion for Entry of Default Judgment filed on February 27, 2023, Dkt. 91. The District Court referred the motion to the undersigned Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72 and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules"). The undersigned held an evidentiary hearing on June 6, 2023.

## I.    BACKGROUND

Plaintiff Wearable Shoe Tree, LLC, is the owner of all rights in and to the S SNEAKER SHIELDS & DESIGN Mark, U.S. Reg. No. 4,686,931, and shown in which is valid and registered on the Principal Register of the United States Patent and Trademark Office, for protective, antimicrobial and deodorant shoe products, including shoe deodorizers, orthopedic shoe inserts, customizable shoe inserts to suit

wearer morphology, shoe trees, and shoe accessories, namely shoe inserts for primarily non-orthopedic purposes, registered on February 17, 2015. Dkt. 2-2; Dkt. 3-1, Siragusa Decl. at ¶ 15.

Wearable Shoe is also the owner of all rights in and to the SHIELDS Mark, U.S. Reg. No. 6,220,820, which is valid and registered on the Principal Register of the United States Patent and Trademark Office, for shoe trees registered on December 15, 2020. Dkt. 3-2. Wearable Shoe sells its shoe tree products via authorized distributors and retailers on the world wide web. Dkt. 2-3; Dkt. 3-1, Siragusa Decl. at ¶¶ 19, 23.

On August 8, 2022, Wearable Shoe filed the Complaint in this case against the Defendant Does identified in "Schedule A" to the Complaint. Dkt. 2-1. Wearable Shoe contends that Defendants are "promoting, advertising, distributing, selling, and/or offering for sale cheap copies of Plaintiff's products in interstate commerce that are counterfeits and infringements of Plaintiff's intellectual property rights [ ] through at least the Internet based e-commerce stores operating under the Seller IDs." Dkt. 2, at 10. Based on the proliferation of these counterfeit products, Wearable Shoe asserts claims of: (1) federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition pursuant to 15 U.S.C. §§ 1114 and 1125(a); and (2) common law unfair competition and trademark infringement. Dkt. 2.

The District Court granted Wearable Shoe's Ex Parte Application for Entry of Temporary Restraining Order, Dkt. 3, on September 13, 2022. Dkt. 8. On October 7,

2022, the District Court held hearing on Wearable Shoe's motion for preliminary injunction as to certain defendants who were served at that time, and subsequently granted it. Dkts. 16, 25. On January 13, 2023, the Court held a hearing on Wearable Shoe's second motion for preliminary injunction as to the remaining defendants. The Court granted both motions for preliminary injunction. Dkts. 78, 88. The Defaulting Defendants (as set out in "Schedule A," *see infra* p. 17) were served with the summons, complaint and other papers filed in this case pursuant to the Court's Order Authorizing Alternate Service of Process. Dkt. 10, Dkt. 12, Dkt. 13, Dkt. 31 and Dkt. 44. None of the Defaulting Defendants appeared. On January 25, 2023, the Clerk entered defaults against the Defaulting Defendants. Dkt. 90. In the meantime, Wearable Shoe has voluntarily dismissed several Defendants from this cause of action.

Wearable Shoe argues that the requirements for entry of a default judgment have been met and that the Court should enter Judgment on Plaintiff's claims of trademark infringement against the Defaulting Defendants and damages awarded in the amounts of $100,000 per defendant pursuant to 15 U.S.C. § 1117; a permanent injunction should be entered pursuant to 15 U.S.C. § 1116 permanently enjoining Defaulting Defendants from further infringement; and an award of Plaintiff's costs and reasonable attorney's fees should be entered pursuant to 15 U.S.C. § 1117. Wearable Shoe's Motion is unopposed.

## II.   LEGAL STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, federal courts have the authority to enter a default judgment against a defendant that has failed to plead or otherwise defend itself. Fed. R. Civ. P. 55(a)-(b). That said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not entitled to a default judgment simply because the defendant is in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Rather, a default judgment is generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

In considering Wearable Shoe's motion, the Court must determine: (1) whether default judgment is procedurally warranted, (2) whether Wearable Shoe's complaint sets forth facts sufficient to establish that it is entitled to relief, and (3) what form of relief, if any, Wearable Shoe should receive. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008); *see also J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015) (using the same framework).

## III.   ANALYSIS

### A. Procedural Requirements

To determine whether entry of a default judgment is procedurally warranted, district courts in the Fifth Circuit consider six factors: "[1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a

good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

On balance, the *Lindsey* factors weigh in favor of entering a default judgment against the remaining Defendants. Because Defendants have not filed responsive pleadings, there are no material facts in dispute. *See Nishimatsu Const. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."). Defendants' failure to appear and respond has halted the adversary process, prejudicing Wearable Shoe's interest in pursuing its claim for relief. *See J & J Sports*, 126 F. Supp. 3d at 814 ("Defendants' failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests.") (citation and quotation marks omitted).

The grounds for default are established: Defendants were properly served through alternative service and have failed to appear and participate at all, much less timely file a responsive pleading. There is no indication that the default was caused by a good faith mistake or excusable neglect. The Court is not aware of any facts that would obligate it to set aside the default if challenged by Defendants. The Court therefore finds that default judgment is procedurally warranted.

## B. Sufficiency of Wearable Shoe's Complaint

Default judgment is proper only if the well-pleaded factual allegations in Wearable Shoe's complaint establish a valid cause of action. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. By defaulting, a defendant "admits the plaintiff's well-pleaded

allegations of fact." *Id.* In determining whether factual allegations are sufficient to support a default judgment, the Fifth Circuit employs the same analysis used to determine sufficiency under Rule 8. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Wooten*, 788 F.3d at 498 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While "detailed factual allegations" are not required, the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Wearable Shoe asserts causes of action against Defendants for: federal Trademark Infringement and Counterfeiting, Unfair Competition, and common law Trademark Infringement. Dkt. 2.

Wearable Shoe's first claim is for Trademark Infringement and Counterfeiting under the Lanham Act, 15 U.S.C. § 1114. Dkt. 2, at 14-15. To prevail on a claim for trademark infringement and counterfeiting under the Lanham Act, the plaintiff must show: "(1) [it] possess[es] a legally protectable trademark, and (2) [Defendants'] use of this trademark 'creates a likelihood of confusion as to source, affiliation, or sponsorship.'" *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) (citations omitted). "A 'likelihood of confusion' means that confusion

is not just possible, but probable." *Mission Pharmacal Co. v. Virtus Pharms., LLC*, 23 F. Supp. 3d 748, 759 (W.D. Tex. 2014).

Fifth Circuit has provided eight non-exhaustive "digits of confusion" for courts to consider in determining whether a likelihood of confusion exists: (1) the type of trademark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, (7) any evidence of actual confusion, and (8) the degree of care exercised by potential purchasers. *Streamline Prod. Sys.*, 851 F.3d at 453. When a defendant uses a plaintiff's exact mark, "a thorough analysis of the digits of confusion is unnecessary, and a presumption of confusion exists." *Choice Hotels Int'l v. Patel*, 940 F. Supp. 2d 532, 540 (S.D. Tex. 2013).

Wearable Shoe alleges that it owns a valid and protectable United States Trademarks S SNEAKER SHIELDS & DESIGN Mark, U.S. Reg. No. 4,686,931, and the SHIELDS Mark, U.S. Reg. No. 6,220,820. Dkt. 2-2; Dkt. 3-1, Siragusa Decl. at ¶ 15; Dkt. 3-2; Dkt. 2-3; Dkt. 3-1, Siragusa Decl. at ¶¶ 19, 23. Defendants have never had the right or authority to use the S SNEAKER SHIELDS & DESIGN and SHIELDS Marks. Dkt 3-1, Siragusa Decl. ¶¶ 66, 54.  The undersigned finds that Wearable Shoe owns valid and protected trademarks.

Wearable Shoe also satisfies the likelihood of confusion test. Evaluating the eight digits of confusion, the undersigned finds that the evidence before the Court supports a likelihood of confusion. First, the marks in issue are strong suggestive

marks recognized in the marketplace. *Springboards To Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 814 (5th Cir. 2019), as revised (Jan. 29, 2019), as revised (Feb. 14, 2019). "Marketplace recognition depends on advertising, length of time in business, public recognition, and uniqueness." *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 698 (S.D. Tex. 2009).

The undersigned finds S SNEAKER SHIELDS DESIGN and SHIELDS Marks are distinctive and represent and signify Wearable Shoe's good will and products. Dkt. 3-1, Siragusa Decl. at ¶¶ 27, 45. The S SNEAKER SHIELDS & DESIGN and SHIELDS Marks have also acquired secondary meaning resulting from Plaintiff's extensive efforts in developing, advertising, and promoting the marks, at an expense of over $125,000 per year. Dkt. 3-1, Siragusa Decl. at ¶¶ 26, 30, 31. As a result, the S SNEAKER SHIELDS & DESIGN and SHIELDS Marks enjoy widespread recognition in the minds of consumers. Dkt. 3-1, Siragusa Decl. at ¶ 34. Because Plaintiff has established that its S SNEAKER SHIELDS & DESIGN and SHIELDS Marks are strong marks, this factor weighs in favor of finding a likelihood of confusion.

In assessing the factor of similarity between the marks, the court must compare the marks' appearance, sound, and meaning. *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 193 (5th Cir. 2018). Though a consumer may "recognize that the two designations are distinct, confusion may result if purchasers are likely to assume that the similarities in the designations indicate a connection between the two users." *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 191 (5th Cir. 1998). Thus, "the relevant inquiry is whether … the marks are sufficiently similar that prospective purchasers

are likely to believe that the two users are somehow associated." *Id.* Wearable Shoe has established that Defendants are using identical names as the S SNEAKER SHIELDS & DESIGN and SHIELDS Marks. Dkts. 2-2, 2-3 (Trademark Registrations, Complaint Ex. 1-2 to defendants' Seller IDs and screen captures in Siragusa Decl. Ex. 1, Dkt. 3-4).

Regarding similarity of the products, "the more similar the products and services, the greater the likelihood of confusion." *Viacom Int'l*, 891 F.3d at 182. Further, relatedness in distribution and use helps determine the similarity of the products for purposes of consumer confusion and trademark infringement. *See Bell v. Starbucks U.S. Brands Corp.*, 389 F. Supp. 2d 766, 768 (S.D. Tex. 2005). Defendants are selling shoe and sneaker inserts, which are the same types of goods Wearable Shoe sells. Dkt. 3-1, Siragusa Decl. at ¶ 45, Dkt. 3. Defendants' goods appear virtually identical to Wearable Shoe's genuine products in the consumer market. This factor weighs in favor of a finding of confusion.

The next factor is the identity of the retail outlets and purchasers. Courts will evaluate whether the genuine goods and counterfeit goods share the same or similar retail outlets and purchasers. *See Future Proof Brands, LLC v. Molson Coors Beverage Co.*, No. A-20-CV-00144-JRN, 2020 WL 3578327, at *4 (W.D. Tex. Mar. 24, 2020), aff'd sub nom. *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280 (5th Cir. 2020). "The greater the overlap between retail outlets and purchasers, the greater the likelihood of confusion." *Viacom Int'l*, 891 F.3d at 194. Both Plaintiff and Defendants advertise and sell their products online using at least

one of the same marketing channels, the internet, in the same geographical distribution areas within the United States, including the Western District of Texas. Dkt. 3-1, Siragusa Decl. at ¶¶ 46, 69. Plaintiff has established that the sales channels overlap and the consumers are the same, and this factor weighs in favor of a finding of confusion.

The fifth factor is the identity of the advertising media used. To determine the identity of advertising media used in an infringement claim, courts look to various sources of commercial speech, "including at the venues where the products are sold and through the use of internet keywords." *Abraham v. Alpha Chi Omega*, 781 F. Supp. 2d 396, 422 (N.D. Tex. 2011). Here, both parties overlap by advertising their products online. Dkt. 3-1, Siragusa Decl. at ¶¶ 44, 66.

The sixth factor is the Defendants' intent. The intent of the defendant in a trademark infringement case may stand alone in the overall analysis. This is because "[i]f a mark is adopted with the intent of deriving benefit from the reputation of another mark, that fact alone may be sufficient to justify the inference that there is confusing similarity." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 254 (5th Cir. 1980). The evidence presented to the Court, Dkt. 3-2, shows that Defendants engaged in clear-cut copying of Wearable Shoe's products, giving rise to an inference that defendants intended to benefit from plaintiff's reputation to plaintiff's detriment. *See Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 704 (5th Cir. 1981); *see also* Dkt. 3-1, Siragusa Decl. at ¶ 65.

Wearable Shoe presents little evidence supporting the seventh and eighth factors; however, its evidence in support of the other six factors is sufficient to show the likelihood of confusion. The undersigned finds that Wearable Shoe has adequately pleaded its trademark counterfeiting and infringement claim, sufficient upon which to base a default judgment for these claims.

With regard to its claims of common law unfair competition and trademark infringement, the same test applies to common law trademark infringement as to federal trademark infringement. *See Liquid Manna, LLC v. GLN Glob. Light Network, LLC*, No. SA-14-CV-1123- DAE, 2016 WL 4385587, at *2 (W.D. Tex. Feb. 24, 2016), report and recommendation adopted, No. 5:14-CV-1123-DAE, 2016 WL 4385589 (W.D. Tex. Mar. 14, 2016). For the same reasons discussed above concerning trademark infringement, the undersigned finds that Wearable Shoe has established Defaulting Defendants' liability for common law unfair competition and trademark infringement. Wearable Shoe is entitled to default judgment on all claims.

### C. Relief

Federal Rule of Civil Procedure 54(c) states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In other words, the relief prayed for in a complaint defines the scope of relief available on default judgment. *Id.* A defendant's default concedes the truth of the allegations of the complaint concerning the defendant's liability, but not damages. *United States v. Shipco Gen. Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Ordinarily, damages will not be awarded without a hearing or a demonstration by

detailed affidavits establishing the necessary facts. *United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir. 1979). However, when the amount of damages or costs can be determined with certainty by reference to the pleadings and supporting documents, and when a hearing would not be beneficial, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). In this case, however, the undersigned held a hearing in which Paul Siragusa testified regarding damages.

### D. Damages

A trademark owner may elect to recover statutory damages "not less than $1,000 or more than $200,000 per counterfeit mark," or if willful, "not more than $2,000,000 per counterfeit mark." 17 U.S.C. § 1117(c). In its complaint, Wearable Shoe alleges that Defendants acted willfully and seeks the maximum statutory damages under the Lanham Act of "$2,000,000 per each counterfeit trademark used and products sold as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act." Dkt. 2 at 21; 15 U.S.C. § 1117(c)(2). Wearable Shoe ultimately requests in its motion that the Court employ its discretion and enter an award of $100,000.00 against each Defaulting Defendant.

Several Circuit Courts of Appeal, as well as courts within the Fifth Circuit, have found willful conduct where a defendant's infringing acts were committed with a "reckless disregard … toward a trademark owner's rights." *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 685, 693 (W.D. Tex. 2008) (referencing *Berg v. Symons*, 393 F. Supp. 2d 525, 539-40 (S.D. Tex. 2005)). Willfulness may also be inferred from the

defendants' default. *Babbala LLC v. Shenzhen Jia Yu Tong Tech. Co. Ltd.*, No. 6:20-CV-01032-ADA-JCM, 2022 WL 2762715, at *2 (W.D. Tex. Mar. 8, 2022).

The Court finds Defendants' conduct to be willful under the Lanham Act. To determine the range of the award for trademark infringement, courts have considered factors such as: "the willfulness of the defendant's conduct, the deterrent effect of an award on both the defendant and on others, the value of the copyright, whether the defendant has cooperated in providing necessary records to assess the value of the infringing material, and the losses sustained by the plaintiff." *Future World Elecs., LLC v. Over Drive Mktg., LLC*, No. 3:12-CV-2124-B, 2013 WL 5925089, at *4 (N.D. Tex. Nov. 5, 2013) (quoting *Comm'l Law League of Am., Inc. v. George, Kennedy & Sullivan, LLC*, No. H-07-CV-0315, 2007 WL 2710479, at *3 (S.D. Tex. Sept. 14, 2007)). A court may also consider "the expenses saved and profits reaped by the infringer." *Future World Elecs., LLC*, 2013 WL 5925089, at *4 (quoting *Playboy Enter., Inc. v. Webbworld, Inc.*, 968 F. Supp. 1171, 1176 (N.D. Tex. 1997)). Additionally, "[w]hile the plaintiff in a trademark infringement case is entitled to damages that will serve as a deterrent, it is not entitled to a windfall." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1089 (N.D. Cal. 2014).

In this case, each of these factors weighs in favor of Wearable Shoe and against Defendants. Defendants have blatantly and willfully infringed on Wearable Shoe's trademarks. Defendants have also failed to cooperate in providing necessary records, which limits the Court's ability to evaluate the losses sustained by Wearable Shoe, the profits reaped by Defendants, or the value of the trademark.

At the hearing before the undersigned, Paul Siragusa, owner of Wearable Shoe, testified that he had infused over one million dollars in capital into Wearable Shoe, spent hundreds of thousands of dollars[1] on advertising, and over $200,000 in research and development into Sneaker Shield products. He also testified that he sells his products for $14.99 and $19.99 while the counterfeit products are available through online merchants for as little as 29 cents each. Siragusa testified that in 2020 his business brought in revenue of over one million dollars, but that after the advent of widespread counterfeiting, his revenues have fallen to less than one thousand dollars a month in 2023.

The deterrence effect of damages weighs in favor of granting Wearable Shoe damages sufficient to discourage Defendants and others from violating Wearable Shoe's and others' trademarks. The undersigned finds that in light of the amount invested in and the decreased sales shown by Wearable Shoe, the amount requested of $100,000.00 per defaulting defendant is inappropriate, and the undersigned finds it should be decreased to $50,000.00.[2] *See BVE Brands v. Does 1-82*, No. 1:20-CV-505, RP (W.D. Tex. Jan 14, 2021), (finding the requested statutory damages of $2,000,000.00 to be excessive, finding willfulness and awarding $100,000.00 in statutory damages per mark); *Coach, Inc. v. Brightside Boutique*, No. 1:11-CV-20 LY,

---

[1] Wearable Shoe pleads that its "investments on marketing and promotion are over $125,000 per year." Dkt. 3-1, Siragusa Decl. at ¶ 30.

[2] While Wearable Shoe requests damages per defaulting defendant, the undersigned finds the statutory language prescribes damages as "per mark" and the undersigned intends that each defendant be liable in the amount of $50,000.00. 15 U.S.C. § 1117(c)(1).

2012 WL 32941, at *6 (W.D. Tex. Jan. 6, 2012), report and recommendation adopted, No. A-11-CA-020-LY, 2012 WL 13149026 (W.D. Tex. Mar. 16, 2012) (granting $100,000 in damages per mark per counterfeit type of good).

### E. Attorney's Fees

Wearable Shoe also seeks to recover its reasonable and necessary attorney's fees and costs pursuant to Section 1117(a) of the Lanham Act. Attorney's fees are available under the Lanham Act for "exceptional cases." *See* 15 U.S.C. § 1117(a). The Fifth Circuit has found "exceptional cases" when the defendant acts maliciously, fraudulently, deliberately, or as in this case, willfully. *Tex. Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992).

The undersigned finds that Wearable Shoe is entitled to recover its attorney's fees because it is the prevailing party on its claims against the Defaulting Defendants for willful trademark infringement and counterfeiting, common law unfair competition, and common law trademark infringement against the Defaulting Defendants. In view of the willful nature of Defendants' infringement and its failure to defend or otherwise participate in this action, an award of costs and attorney's fees to Wearable Shoe is appropriate.

The declaration of Plaintiff's attorney, Joel B. Rothman, establishes the reasonable attorney's fees[3] incurred by Plaintiff for the prosecution of this lawsuit as

---

[3] The Fifth Circuit uses the "lodestar" method to calculate reasonable attorney's fees. *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). The lodestar fee is calculated by multiplying the number of hours spent on the matter by a reasonable hourly rate for such work in the community. *Id.* Once the calculation is made, the court may raise

of the date of filing totals $72,062.50. Dkt. 91-2; *see also Christus Health Care Sys., Inc. v. Am. Consultants RX, Inc.*, No. SA:12-CV-1221-DAE, 2014 WL 1092096, at *6 (W.D. Tex. Mar. 18, 2014) (calculating attorney's fees for copyright and trademark infringement together under the lodestar method). Wearable Shoe also seeks recovery of its costs and expenses totaling $3,429.84 incurred in litigation costs and expenses. Dkt. 91-2. Wearable Shoe requests the Court to award it one-half the total attorney's fees it has incurred to date in this case, as it estimates that half the time incurred in this case was related to activities concerning all the Defendants including the Defaulting Defendants, with the other half related to negotiating resolutions with Defendants who contacted Plaintiff through counsel or directly. *Id.* Therefore, Plaintiff requests that the Court award half of Plaintiff's attorney's fees in the amount of $36,031.25, and its full costs and expenses of $1,660.14, for a total of $39,461.09.

Having reviewed Rothman's declaration, and finding the fees charged and times accorded to be reasonable, the undersigned finds that an award of $39,461.09 of costs and fees should be awarded.

**F. Permanent Injunction**

Section 1116(a) authorizes courts to issue injunctions to prevent and restrain trademark violations. See 15 U.S.C. § 1116(a). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy

---

or lower the lodestar amount based on the weight of twelve factors set forth *in Johnson v. Ga. Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974).

at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995).

A plaintiff seeking a permanent injunction must generally satisfy a four-factor test: (1) the plaintiff has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate compensation; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) a permanent injunction would not disserve the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The undersigned finds that all four factors weigh in favor of granting a permanent injunction against Defaulting Defendants. The court previously found these factors in favor of Wearable Shoe when it entered the preliminary injunction in this matter. Dkt. 25 and Dkt. 28. The undersigned finds that Wearable Shoe has carried its burden on each of the four factors warranting permanent injunctive relief on this same basis.

Accordingly, the undersigned recommends that Defaulting Defendants[4] from "Schedule A": 1-5, 7, 9, 11-17, 19, 24, 25, 28-35, 39, 41-44, 50-54, 57, 59-64, 67-80, 82-89, 91-121, 123, 124, 126-129, 131-133, 140, 147, 150, 153-155, 158, 167, 171, 172, 176, 179-197, 199-203, 205-209, 211-214, 217, 219-226, 228, 231, 233-237, 240, 241, 243, 244, 246-249, 255, 258, 260, 265, 271-274, 276-278, 281-283, 286, 291, 292, 294-299, 303, 304, 307-312, 314, 315, 317-321, 325, 326, 330, 332, 333, 335, 337-342, 345,

---

[4] The undersigned notes that parties continue to settle, and this list of Defaulting Defendants is accurate up to the date of signature of this Report and Recommendation.

347-355, 357-365, 329, 374-377, 379, 381-397, 400-407, be permanently enjoined from selling the Counterfeit Products described above, and order that all assets in the Defaulting Defendants' Amazon, eBay, Alibaba, AliExpress, DHGate, Joom, PayPal, Walmart, Wish, Payoneer, WorldFirst, LianLian Pay, or other domestic and foreign bank accounts, as well as any newly discovered assets, be transferred to Plaintiff.

## IV.   RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that Plaintiff's Motion for Entry of Default Judgment filed on February 27, 2023, Dkt. 91, be **GRANTED** as to the Defaulting Defendants outlined above, statutory damages be awarded in the amount of $50,000.00 per mark as to each defaulting defendant for a total of $50,000.00 per defendant, a permanent injunction be entered, and fees and costs awarded in the amount of $39,461.09. **IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

## V.   WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo

review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED June 27, 2023.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE